**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JONATHAN ACOSTA, | CASE NO. 1:24-cv-00104 |
| Petitioner, | JUDGE JAMES R. KNEPP II |
| vs. | |
| WARDEN TIM MCCONAHAY, | MAGISTRATE JUDGE AMANDA M. KNAPP |
| Respondent. | **<u>REPORT AND RECOMMENDATION</u>** |

Petitioner Jonathan Acosta brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his guilty plea and resulting convictions for aggravated murder and offenses against a human corpse in Cuyahoga County Common Pleas Court Case No. CR-14-582384-A. (ECF Doc. 1 ("Petition"); ECF Doc. 3 ("Amended Petition").)  Mr. Acosta filed his Petition through counsel on January 17, 2024, and his Amended Petition on May 13, 2024.  The matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  The case is briefed and ripe for disposition.  (ECF Docs. 8, 12.)

For the reasons set forth herein, the undersigned recommends that the Court **DENY** Ground Three of the Amended Petition on the merits, **DISMISS** Grounds One and Two as not cognizable on federal habeas review, and **DISMISS** Ground Four as waived and/or not cognizable on federal habeas review.

1

### I.        Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

In its September 22, 2022 decision pertaining to Mr. Acosta's Motion to Withdraw, the Eighth District Court of Appeals summarized the facts underlying Mr. Acosta's conviction as follows:

> {¶ 3} The charges stemmed from the 2014 murder of Alexavier Gonzalez ("Gonzalez"). Acosta, who was 17 years old at the time, provided the following facts to police.
>
> {¶ 4} On the day of Gonzalez's murder, Acosta and Gonzalez played video games at Acosta's residence. While they played, Gonzalez made "concerning" statements to Acosta about who he could trust.
>
> {¶ 5} Acosta had a fishing knife that he kept in a sheath on his bedroom dresser and realized at some point that Gonzalez had taken it. Gonzalez told Acosta he was going to kill him and stabbed Acosta in his right leg. Acosta grabbed a baseball bat, and when Gonzalez attacked him again, Acosta hit Gonzalez in the head with the bat.
>
> {¶ 6} Acosta ran out of the room, and Gonzalez ran after him again. Acosta hit Gonzalez with the bat again, which caused Gonzalez to drop the knife. Acosta grabbed the knife and stabbed Gonzalez in the neck. Acosta ran away to the bathroom, and Gonzalez continued to come after him. In the bathroom, Gonzalez attempted to attack Acosta again and Acosta hit him with the baseball bat. Gonzalez fell into the tub. He was still moving, so Acosta stabbed him in the back.
>
> {¶ 7} Acosta then proceeded to clean up the scene. He pulled Gonzalez out of the tub and put his body into garbage bags. He tied up the body and dragged it downstairs to the back door of the residence. He went outside to look for a garbage can. He found one and brought it to the back door of the residence. He put Gonzalez's body into the can, headfirst. Acosta then dragged the garbage can into the alley where he left it. He returned to his residence and placed his knife back into the sheath on his dresser.

{¶ 8} Acosta then changed his clothes and began cleaning up the blood. While doing so, his father arrived home. He told his father that his friend had gone crazy and stabbed him, so Acosta had to kill him. Acosta's father called 911.

{¶ 9} Acosta was taken to the hospital for the stab wound on his leg. When he was released, he was transported to the police station. During his interview with police, Acosta admitted that another person, David Rivera, was present at the time of Gonzalez's death. Acosta then told the following slightly different version of events.

{¶ 10} Acosta was playing video games with Gonzalez and Rivera in his room. Acosta left the room momentarily and upon his return, Gonzalez was upset that Rivera beat him in a game, and he stabbed Acosta. He stated that Rivera was the one who found the garbage can used for Gonzalez's body.

{¶ 11} Police went to Rivera's home and arrested him. He was interviewed by a detective and gave both an oral and written statement. In his statements, he stated that he received a text message from Acosta asking Rivera to call him. When Rivera called him, Acosta told Rivera that he wanted to kill someone who had insulted and stolen from him. Rivera believed Acosta to be joking and went to his residence where Gonzalez and Acosta were hanging out in Acosta's room.

{¶ 12} Gonzalez took a shower while Rivera and Acosta played video games. When Gonzalez came out of the shower, Rivera and Acosta were playing a game he did not know. Rivera gave Gonzalez the controller to play the game while he and Acosta watched.

{¶ 13} Rivera stated that he suddenly saw Acosta swing his arm downward toward Gonzalez. Rivera observed a knife in Acosta's hand and a stab wound on Gonzalez's neck. Gonzalez began yelling and tried to get away by running downstairs. Acosta then threatened to kill Rivera if he did not help him kill Gonzalez. Rivera said that he did not want to be involved, and Acosta left the bedroom.

{¶ 14} Rivera heard yelling downstairs, then Gonzalez came back upstairs and asked Rivera to call his family. Acosta returned upstairs, and Rivera saw Acosta hit Gonzalez on top of the head with a baseball bat. Gonzalez fell to the floor and Acosta continued to beat him in the head with the bat. Rivera heard Gonzalez either crawling or Acosta dragging him to the bathroom. A short while later, Acosta came back into the bedroom where Rivera had stayed. He threatened to kill Rivera again if he did not help Acosta clean up. Rivera retrieved cleaning products and went to the kitchen. He observed blood on the floor and the sink. He also observed another knife on the counter. He cleaned up the blood in the kitchen and some in the living room.

{¶ 15} Rivera then heard Acosta dragging Gonzalez's body down the stairs. It was wrapped in multiple trash bags, but Rivera could still see portions of his body. Acosta dragged Gonzalez's body to the back door where Rivera saw a garbage can. Acosta told Rivera to hold the garbage can while he put Gonzalez's body inside. Rivera complied, and Acosta put Gonzalez's body in headfirst with his feet and some of his legs sticking out of the top. Acosta and Rivera then carried the garbage can to a nearby alley. Acosta stated that while carrying the can, Rivera pretended to fall and hurt his foot.

{¶ 16} Acosta then told Rivera to leave but threatened to hurt him if Rivera told anyone what had happened. As he left, Rivera observed that Acosta had dragged the can down the alley across West 35th Street.

{¶ 17} Rivera went home, put his clothes in the laundry, and took a shower. He did not tell anyone what had happened. He told police that he had only assisted because he was afraid of what Acosta would do to him if he did not participate. He further told police that Acosta had not been injured in the confrontation and did not show any signs that he was injured afterward. The wound to Acosta's calf was a superficial wound that police believed was self-inflicted.

{¶ 18} Acosta later pled guilty to aggravated murder and abuse of a corpse, and the remaining counts were dismissed. Acosta was sentenced to 25 years to life in prison in the aggravated murder count and nine months on the abuse of a corpse count, to run concurrently. He did not file a direct appeal.

*State v. Acosta*, 2022-Ohio-3327, ¶¶ 3-18, 2022 WL 4373943, at *1-3 (Ohio App. Ct. Sept. 22, 2022); (ECF Doc. 8-1, pp. 433-37.)

## II.      Procedural Background

### A.      State Court Conviction

On February 14, 2014, a Cuyahoga County, Ohio grand jury indicted Mr. Acosta on one count of aggravated murder, two counts of felony murder, three counts of felonious assault, one count of tampering with evidence, and one count of abuse of a corpse.  (ECF Doc. 8-1, pp. 5-7.) Mr. Acosta was arraigned and pled not guilty on March 3, 2014.  (*Id.* at p. 9.)  On January 13, 2015, he appeared in court with counsel, withdrew his prior not guilty plea, and pled guilty to aggravated murder and offenses against a human corpse as charged.  (*Id.* at p. 15.)  All other counts were dismissed.  (*Id.*)  On February 18, 2015, the trial court sentenced Mr. Acosta to 25

4

years to life in prison for aggravated murder and nine years for offenses against a corpse,

sentences to run concurrently, with five years mandatory post-release control.  (*Id.* at p. 17.)

Mr. Acosta did not file a direct appeal of his conviction.

**B.     Motion to Withdraw Guilty Plea**

On August 11, 2021, through counsel, Mr. Acosta filed a motion to withdraw guilty plea

("Motion to Withdraw") based on new evidence in the form of an affidavit from David Rivera

recanting the story he told police at the time of Mr. Acosta's arrest.  (ECF Doc. 8-1, pp. 19-37

(motion and brief in support), 39-97 (amended brief in support of motion including exhibits).)  In

his brief in support, Mr. Acosta argued that he did not knowingly, voluntarily, and intelligently

plead guilty because: 1) he pled guilty based on the strength of the state's evidence of aggravated

murder in the form of Mr. Rivera's original statement; 2) Mr. Rivera's new and allegedly

accurate version of the events underlying Mr. Acosta's conviction established that he acted in

self-defense; and 3) based on this new evidence Mr. Acosta could only have been charged with

murder, and therefore, he "could not have made a knowing, voluntary, and intelligent plea to the

crime of aggravated murder."  (*Id.* at pp. 52-54.)  He also argued that his sentence was

unconstitutional.  (*Id.* at p. 59.)  With leave of the trial court, the state filed a response under seal

to preserve the confidentiality of relevant medical records.  (*Id.* at pp. 102-05.)

On October 26, 2021, the trial court conducted a hearing on Petitioner's Motion to

Withdraw.  (ECF Doc. 8-1, p. 437; *see* ECF Doc. 8-2, pp. 46-189.)  At the hearing, Mr. Rivera

testified that he had falsified the statement he made to police at the time of Mr. Acosta's arrest

because police told him that Mr. Acosta was "trying to throw [him] under the bus."  (ECF Doc.

8-1, p. 437 (alteration in original).)  He then testified to a different version of the events

underlying Mr. Acosta's conviction, painting the victim as more of an aggressor.  (*Id.* at pp. 437-

39.)  Mr. Acosta testified as to the reasons he pled guilty, and Detective Raymond Diaz testified on behalf of the state regarding his original interview of Mr. Rivera.  (*Id.* at pp. 440-41.)  The trial court also reviewed a video of Mr. Rivera's interview, and an audio recording of a phone call Mr. Acosta made while in jail.  (*Id.* at pp. 439-40.)

On November 16, 2021, the trial court granted Mr. Acosta's Motion to Withdraw.  (*Id*. at pp. 107-13.)  The state moved for leave to appeal the trial court's decision to the Eighth District Court of Appeals.  (*Id.* at pp. 115, 133.)  The appellate court granted the motion (*id.* at pp. 377), and the state filed an appellate brief on April 19, 2022 (*id.* at pp. 380-405), raising the following assignments of error:

1.  A guilty plea that is entered into knowingly, voluntarily, and intelligently cannot be withdrawn based on claims of innocence or newly discovered evidence.

2.  A trial court abuses its discretion in granting a motion to withdraw guilty plea due solely to recanting testimony from a co-defendant where the trial court ignores evidence affecting the recantation's credibility.

(*Id.* at pp. 381-82.)  Petitioner, through counsel, filed an appellate brief on June 13, 2022, arguing that: 1) a guilty plea could be challenged based on new evidence; 2) his plea could not have been made knowingly, intelligently, and voluntarily because it was "entered on the reliance of known false statement"; and 3) the trial court did not abuse its discretion when it granted his Motion to Withdraw.  (*Id.* at pp. 408-24.)  On September 22, 2022, the Eighth District reversed the trial court's decision and upheld the validity of Mr. Acosta's guilty plea.  (*Id.* at pp. 432-46.)

Petitioner moved the appellate court to certify a conflict to the Supreme Court of Ohio because the Eighth District's decision conflicted with precedent from the First District.  (*Id.* at pp. 450-58.)  On October 28, 2022, the Eighth District denied his motion.  (*Id.* at p. 459.)

On November 7, 2022, Petitioner, through counsel, filed a notice of appeal from the Eighth District's September 22, 2022 decision to the Supreme Court of Ohio.  (*Id.* at pp. 461-62.)

He filed a memorandum in support of jurisdiction (*id.* at pp. 465-79), in which he raised the

following propositions of law:

1.  A guilty plea does not preclude a claim of diminished culpability or newly discovered evidence.

2.  The Court does not have jurisdiction to establish new hurdles not contemplated by the legislature in setting forth the criminal rules.

3.  Where a plea is entered without understanding or knowledge that one's admitted conduct constituted a lesser offense that plea is not knowingly, intelligently, or voluntarily made.

4.  The appellate court's reliance on its stated opinion of the reputation of trial counsel is error as that reputation is outside the record and each claim must be determined solely on the record before the court.

5.  Where a defendant is a juvenile and moves to withdraw his plea pursuant to Crim. R. 32.1, a change of plea colloquy in which the trial court fails to consider the effects of the defendant's youth upon the knowing intelligent and voluntary nature of his plea, should be viewed with the utmost suspicion.

(*Id.* at p. 481.)  The state filed a memorandum in response.  (*Id.* at pp. 480-92.)  On January 17,

2023, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  (*Id.* at p. 494.)

**C.      Federal Habeas Corpus Petition**

On January 17, 2024, Mr. Acosta, through counsel, filed a federal habeas corpus petition

under 28 U.S.C. § 2254 in the Northern District of Ohio.  (ECF Doc. 1.)  On May 13, 2024, he

filed an amended petition.  (ECF Doc. 3.)  In his amended petition, Mr. Acosta presented the

following grounds for relief:

**Ground One:**  A guilty plea does not preclude a claim of diminished culpability or newly discovered evidence.

**Supporting Facts:** The reviewing court did not weigh any evidence in the record arising out of the 32.1 hearing. It improperly limited the scope to the plea proceeding, and omitted review of the relevant motion to withdraw plea hearing, which was part of the record. The reviewing court failed to include the full record in its review, which included new evidence establishing a manifest injustice in the plea proceedings.

**Ground Two:** The Appellate Court may not establish new hurdles not contemplated by the legislature in setting forth the criminal rules.

**Supporting Facts:** 1) The reviewing court attempted to proscribe the narrowest definition of "manifest injustice" instead of the common, ordinary and accepted meaning; 2) trial courts are not permitted to impose additional hurdles on criminal defendants; 3) in applying a narrower definition of "manifest injustice" than was intended by the legislature, the trial court imposed an additional hurdle on Mr. Acosta.

**Ground Three:** Where a plea is entered without understanding or knowledge that one's admitted conduct constituted a lesser offense that plea is not knowingly, intelligently or voluntarily made.

**Supporting Facts:** The plea was not knowingly, intelligently or voluntarily made because it relied on the false statement of another, which led Mr. Acosta to believe he would not prevail at trial.

**Ground Four:** The trial court did not abuse its discretion by looking outside the plea proceeding when granting Mr. Acosta's motion to withdraw his plea.

**Supporting Facts:** 1) The trial court considered newly discovered evidence that was not previously in the record; 2) the trial court relied on these newly discovered facts to grant Mr. Acosta's motion to withdraw his plea; 3) it was not arbitrary, unreasonable or unconscionable for the trial court to do so.

(*Id.* at pp. 6-11.) On November 15, 2024, Respondent filed his Return of Writ, arguing that dismissal or denial of Mr. Acosta's Amended Petition is warranted because: 1) Grounds One through Four are not cognizable on federal habeas review; 2) Grounds One and Three are without merit; and/or 3) Ground Four is procedurally defaulted. (ECF Doc. 8.) On February 19, 2025, Petitioner filed his Traverse. (ECF Doc. 12.)

In the Traverse, Petitioner concedes that Ground Two is not cognizable. (*Id.* at p. 2; *see also id.* at p. 7 (no argument on Ground Two).) The undersigned agrees and recommends that Ground Two be **DISMISSED** as not cognizable. The remaining grounds are addressed below.

### III.    Law & Analysis

**A.    Standard of Review Under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214 ("AEDPA") limits the adjudication of federal habeas petitions in which state prisoners have collaterally attacked their convictions.  *See Reed v. May*, 134 F.4th 455, 459 (6th Cir.), *cert. denied sub nom. Reed v. Fredrick*, 146 S. Ct. 226, 223 L. Ed. 2d 78 (2025); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.").  Under 28 U.S.C. § 2254, as amended by AEDPA, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies."  *Cullen*, 563 U.S. at 181 (citing 28 U.S.C. §§ 2254(a), (b), (c)).

"AEDPA's 're-litigation bar' applies when a state court denies a prisoner's claim on the merits, rather than denying it for procedural reasons."  *Reed*, 134 F.4th at 459 (citing 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 98 (2011)).  Under the "re-litigation bar," when a federal habeas application involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the State court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington*, 562 U.S. at 100.  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

The Sixth Circuit has explained that "AEDPA authorizes a federal court to grant a writ of habeas corpus for state prisoners only to guard against 'extreme malfunctions in the state criminal justice systems.'" *Hodge v. Plappert*, 136 F.4th 648, 657 (6th Cir. 2025), *cert. denied*, No. 25-6179, 2026 WL 79639 (U.S. Jan. 12, 2026) (quoting *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022)).  This is because "Congress recognized that '[f]ederal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.'" *Id.* at 657-58 (quoting *Harrington*, 562 U.S. at 103 (brackets in original)).  "Congress designed 28 U.S.C. § 2254(d) to remind federal courts that 'state courts are the principal forum for asserting constitutional challenges to state convictions.'" *Id*. at 658 (quoting *Harrington*, 562 U.S. at 103).

For ease of discussion, the remaining grounds for relief will be addressed out of order.

**B.      Ground Three Should Be Denied on the Merits**

In Ground Three, Mr. Acosta asserts that his 2015 guilty plea was not "knowingly, intelligently[,] or voluntarily made" because he did not understand that his "admitted conduct constituted a lesser offense" than aggravated murder and entered his guilty plea in reliance "on the false statement of another."  (ECF Doc. 3, p. 9.)  He explains that testimony at the 2021 evidentiary hearing revealed he "did not understand the elements of prior calculation and design" when he entered his plea, and did not understand that "his admitted conduct constituted a lesser offense than the crime charged" until witness David Rivera recanted earlier "materially false statements."  (ECF Doc. 12, p. 8.)  He argues that the AEDPA standards are met for Ground Three because: (1) the state appellate court's failure to consider the new evidence in evaluating his motion to withdraw his guilty plea "ignores . . . firmly established Supreme Court precedent requiring the court to assess the knowing, intelligent, voluntary nature of the plea in light of all

10

of the circumstances"; and (2) the state appellate court unreasonably interpreted the facts in light of the record when it did not consider new evidence suggesting the plea was not knowing, intelligent, or voluntary and did not give weight to the trial court's finding that the new testimony was credible. (*Id.* at pp. 8-10.)

Respondent argues that the only question properly before the Court on federal habeas review of Petitioner's guilty plea "is whether the plea was counseled and voluntary." (ECF Doc. 8, p. 24 (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)).[1] In that context, Respondent argues that "[t]he record supports the appellate court's finding that [Mr.] Acosta's guilty plea was knowingly, voluntarily, and intelligently entered," and that the evidence presented in the 2021 evidentiary hearing "does not entitle him to withdraw his plea under *Brady* [*v. United States*, 397 U.S. 742 (1970)]." (*Id.* at p. 27.) The undersigned agrees.

### 1.  **Legal Standard for Habeas Review of Guilty Plea**

Two things must be noted as an initial matter. First, to the extent Petitioner argues in Ground Three that the state appellate court erred in how it applied state law, such claims are not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]"). Second, to the extent Ground Three seeks to challenge the state appellate court's ruling on Mr. Acosta's post-conviction motion to withdraw his guilty plea, "the Sixth Circuit has consistently held that errors in [state] post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986) and *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). No such challenges are appropriately before this Court.

---

[1] Respondent's related argument that any challenge to the state appellate court's ruling on the Motion to Withdraw is not cognizable on federal habeas review is addressed more fully in Section III.C., *infra.*

Nevertheless, because a guilty plea includes a waiver of constitutional rights, the U.S. Supreme Court has recognized that federal habeas review is appropriate where the question is whether the guilty plea was knowing, voluntary, and intelligent.  *Brady*, 397 U.S. at 748; *see Boyd v. Yukins*, 99 F. App'x 699, 702-03 (6th Cir. 2004) (reviewing validity of guilty plea on habeas review); *Garcia v. Johnson*, 991 F.2d 324, 326-28 (6th Cir. 1993) (same); *Spencer v. Campbell*, No. 21-2610, 2021 WL 6197324, at *2 (6th Cir. Dec. 17, 2021) (same).

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)); *see Spencer*, 2021 WL 6197324 at *2 (citing *Hill*, 474 U.S. at 56 and *Alford*, 400 U.S. at 31).  Because a defendant waives a number of federal constitutional rights upon entering a guilty plea, the Supreme Court has explained that due process requires the waiver to "be an intentional relinquishment or abandonment of a known right or privilege."  *See Boykin v. Alabama*, 395 U.S. 238, 243, n.5 (1969) (internal quotations and citations omitted).  Therefore, a guilty plea must "not only . . . be voluntary but must be knowing, [and] intelligent . . . with sufficient awareness of the relevant circumstances and likely consequences."  *Brady*, 397 U.S. at 748; *see also Boykin*, 395 U.S. at 243 n.5 ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.").

Under the *Brady* "voluntariness" standard, a guilty plea "entered by one fully aware of the direct consequences" should stand unless it was induced by threats, misrepresentations, or improper promises.  397 U.S. at 755; *see id.* at 757 (indicating a voluntary plea may be upheld "absent misrepresentation or other impermissible conduct by state agents").  "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted

12

that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id.* at 757.  In other words, the Constitution does not require "that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought[.]" *Id.*

### 2.        State Court Adjudication of Guilty Plea

In its September 22, 2022 opinion on Mr. Acosta's motion to withdraw his guilty plea, reversing the trial court decision granting the motion, the court of appeals explained:

> {¶ 43} We review a trial court's decision regarding a defendant's postsentence motion to withdraw a guilty plea under an abuse-of-discretion standard. *State v. Simmons*, 8th Dist. Cuyahoga No. 109786, 2021-Ohio-1656, ¶ 19. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. Such an abuse "'"implies that the court's attitude is unreasonable, arbitrary or unconscionable."'" *State v. Montgomery*, Slip Opinion No. 2022-Ohio-2211, ¶ 135, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).
>
> {¶ 44} A motion to withdraw a guilty plea is governed by Crim.R. 32.1. This rule provides: "A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "The defendant bears the burden of establishing the existence of 'manifest injustice.'" *State v. Hobbs*, 8th Dist. Cuyahoga No. 109706, 2021-Ohio-852, ¶ 6, citing *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. "Manifest injustice is 'a clear or openly unjust act,'" "that is evidenced by 'an extraordinary and fundamental flaw in the plea proceeding.'" *Simmons* at ¶ 20, quoting *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998); *State v. McElroy*, 8th Dist. Cuyahoga Nos. 104639, 104640, and 104641, 2017-Ohio-1049, ¶ 30.
>
> {¶ 45} Acosta contends that the affidavit and testimony from Rivera, recanting his statement to police, is sufficient to demonstrate manifest injustice in his plea proceeding. We disagree. In his motion, Acosta asserted that because of Rivera's recantation, the state would not have any evidence of prior calculation or design to be able to convict him of aggravated murder. He contends that he could only be charged with murder, and he would have proceeded to trial and claimed self-

13

defense. However, Acosta's claim that he is innocent of aggravated murder is not sufficient grounds to vacate a plea that was knowingly, intelligently, and voluntarily entered. *See State v. Heisa*, 8th Dist. Cuyahoga No. 101877, 2015-Ohio-2269, citing *State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146; *State v. Bloom*, 8th Dist. Cuyahoga No. 97535, 2012-Ohio-3805.

{¶ 46} We note that Acosta has not asserted that he was innocent of aggravated murder until now. "A defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt." *State v. Linder*, 8th Dist. Cuyahoga No. 99350, 2013-Ohio-5018, ¶ 16, citing *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, syllabus.

{¶ 47} As noted by the state, Acosta had knowledge of what occurred on the day that Gonzalez was killed and therefore would have known if Rivera's statements were true or false. Yet he still entered a guilty plea to aggravated murder, thereby completely admitting his guilt. "[A] counseled plea of guilty to a charge removes the issue of factual guilt from the case." *State v. Zimmer*, 8th Dist. Cuyahoga No. 90846, 2008-Ohio-6953, ¶ 23, citing *State v. Stumpf*, 32 Ohio St.3d 95, 104-105, 512 N.E.2d 598 (1987); *State v. Woodley*, 8th Dist. Cuyahoga No. 83104, 2005-Ohio-4810, ¶ 12.

{¶ 48} The record reflects that Acosta received a full Crim.R. 11 hearing where the trial court engaged in a thorough colloquy with Acosta, informing him of each of the rights he was giving up and ensuring that he understood the same. Acosta does not argue otherwise.

{¶ 49} In analyzing Acosta's motion, the trial court weighed Rivera's age when giving his statement to police, the fact that he was without an attorney or parent/guardian, and the fact that he was under the mistaken belief that Acosta was going to blame him for Gonzalez's death. However, these circumstances all existed at the time of Acosta's plea. While it was unknown that Rivera would later recant, any issues with the police interview of Rivera and his statement could have been explored during the pendency of Acosta's case.

{¶ 50} Moreover, throughout the plea process, appellant was represented by two experienced and competent counsel. During the plea hearing, his counsel stated that, in their professional opinion, they believed that his plea would be knowing, voluntary, and intelligently of his own free will. Acosta does not argue that he did not receive effective assistance of counsel with regard to his plea. When questioned by the court, Acosta stated he was satisfied with the services provided by his attorneys and that they had done everything that he asked them to do.

{¶ 51} Consequently, Acosta has failed to demonstrate anything occurring in the plea proceeding that caused his plea to not be knowing, intelligent, and voluntary. Because Acosta has not demonstrated manifest injustice in the plea proceeding, the

trial court abused its discretion in granting his motion. The state's first assignment of error is sustained.

*Acosta*, 2022-Ohio-3327, ¶¶ 43-51, 2022 WL 4373943, at *5-6 (footnote omitted).

### 3.    Ground Three Should Be Denied on the Merits

To prevail on the claim in Ground Three that his guilty plea was not knowing, intelligent, or voluntary, Mr. Acosta must establish either that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181.  The undersigned will address each provision in turn.

#### i.    Petitioner Has Failed to Show the State Appellate Court Decision was Contrary to or an Unreasonable Application of Federal Law

Beginning with whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under § 2254(d)(1), Mr. Acosta argues the state court's decision is contrary to Supreme Court precedent that requires guilty pleas to be evaluated "in light of all the circumstances."  (ECF Doc. 12, p. 8 (citing *Haynes* v. *Washington*, 373 U.S. 503, 513 (1963); *Leyra* v. *Denno*, 347 U.S. 556, 558 (1954); *Brady*, 397 U.S. at 749).)  Specifically, he argues that a review of "all the circumstances" reveals that he "did not understand the elements of prior calculation and design" when he entered his guilty plea because he did not understand that "his admitted conduct constituted a lesser offense than the crime charged" until witness David Rivera recanted his earlier "materially false statements."  (*Id.*)

When Petitioner asserts that he "did not understand the elements of prior calculation and design" at the time of his guilty plea, he does not appear to be arguing that he did not understand

15

what those elements meant, that they were elements of the charge against him, or that he was admitting those elements when he pled guilty. Certainly, he does not make an explicit argument to that effect or present evidence to support such a finding. Instead, he appears to argue that the thing he "did not understand" when he pled guilty was that certain evidence supporting a finding of prior calculation and design—namely, Mr. Rivera's 2014 statements to police—would later be recanted or drawn into question by Mr. Rivera's 2021 testimony. Effectively, he argues his plea was not knowing, voluntary, and intelligent because he would not have pled guilty to the charge of aggravated murder in 2014 if he knew Mr. Rivera's potential trial testimony would match his testimony at the 2021 evidentiary hearing rather than his 2014 statements to police.[2]

In finding that Mr. Acosta's new claim of innocence to the charge of aggravated murder was "not sufficient grounds to vacate a plea that was knowingly, intelligently, and voluntarily entered," *Acosta*, 2022-Ohio-3327, ¶ 45, the state appellate court considered the following:

- Mr. Acosta only recently asserted he was innocent of aggravated murder but entered his guilty plea in 2014 without asserting actual innocence, *id.* at ¶ 46;

- Mr. Acosta was present and thus had personal knowledge of what occurred on the day Mr. Gonzalez was killed, and still entered a "counseled plea of guilty," *id.* at ¶ 47;

- Mr. Acosta received "a full Crim.R. 11 hearing where the trial court engaged in a thorough colloquy with [Mr.] Acosta, informing him of each of the rights he was giving up and ensuring that he understood the same," *id.* at ¶ 48;

- While Mr. Acosta did not know at the time of his guilty plea that Mr. Rivera would later recant portions of his 2014 statements to the police, he was free to explore "any issues with the police interview of Rivera and the statement . . . during the pendency of [his] case," *id.* at ¶ 49; and

_____

[2] Mr. Acosta's recitation of language from the trial court's decision on his Motion to Withdraw as "establish[ing] [his] innocence as to aggravated murder" is informative: "Here, Acosta maintains his decision to enter into a plea agreement of Aggravated Murder, was predicated entirely upon his anticipation of false testimony from David Rivera. Mr. Rivera, approximately 7 years later, now recants his statements given to law enforcement directly after the incident and states he lied to police about details that establish prior calculation and design. These details are the only evidence against Defendant to which the state relied upon when charging Defendant with Aggravated Murder." (*See* ECF Doc. 12, p. 11 (quoting ECF Doc. 8-1, p. 364).)

16

- Mr. Acosta was represented by "two experienced and competent counsel" throughout the plea process, stated at the plea hearing that he was satisfied with his counsel, and did not argue that he received ineffective assistance of counsel at the plea hearing, while his counsel stated at the plea hearing that "they believed his plea would be knowing, voluntary, and intelligently of his own free will," *id.* at ¶ 50.

Based on all of these considerations, the state court of appeals found that Mr. Acosta "failed to demonstrate anything occurring in the plea proceedings that caused his plea to not be knowing, intelligent, and voluntary," and therefore concluded that the trial court had abused its discretion in granting Mr. Acosta's motion to withdraw his guilty plea. *Id.* at ¶ 51.

In considering whether the state appellate court's findings were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under § 2254(d)(1), the undersigned must consider whether the Supreme Court cases cited in Mr. Acosta's Traverse meet this standard. (*See* ECF Doc. 12, p. 8 (citing *Haynes*, 373 U.S. at 513; *Leyra*, 347 U.S. at 558; *Brady*, 397 U.S. at 749).) They do not.

The decisions in *Leyra* and *Haynes* do not address the validity of a guilty plea. Instead, they relate to confessions used against criminal defendants at trial. In *Leyra*, the court found a series of confessions coerced from "a lone defendant unprotected by counsel" inconsistent with due process. 347 U.S. at 558, 561-62. In *Haynes*, the court found a written confession "obtained in an atmosphere of substantial coercion and inducement created by statements and actions of state authorities" was "obtained under a totality of circumstances evidencing an involuntary written admission of guilt." 373 U.S. at 513-14. Mr. Acosta's only explanation regarding the relevance of these decisions is a statement that they relate to "firmly established Supreme Court precedent requiring the court to assess the knowing, intelligent, voluntary nature of the plea in light of all of the circumstances." (ECF Doc. 12, p. 8.) While this is an accurate description of the standard, neither *Leyra* nor *Haynes* shed any light on Mr. Acosta's contention that the circumstances surrounding his guilty plea rendered it involuntary. There is no allegation, for

17

example, that Mr. Acosta was deprived of sleep or medical care, put into a trance, detained or interrogated without being advised of his constitutional rights, or denied an opportunity to contact his family or retain counsel, as in *Leyra* and *Haynes*.  The two cases thus do not support a finding that Mr. Acosta's guilty plea was obtained in circumstances that render it invalid.

In *Brady*, the defendant claimed his guilty plea was not voluntary because he decided to plead guilty based in part on the potential impact of a statute later found unconstitutional by the Supreme Court.  *See* 397 U.S. at 745-46.  The Court had found in *United States v. Jackson*, 390 U.S. 570 (1968), that 18 U.S.C. § 1201(a) "permitted imposition of the death sentence only upon a jury's recommendation and thereby made the risk of death the price of a jury trial" and was unconstitutional because it had the "inevitable effect" of "discourag[ing] assertion of the Fifth Amendment right not to plead guilty and . . . deter[ing] exercise of the Sixth Amendment right to demand a jury trial."  *Brady*, 397 U.S. at 745-46 (discussing *Jackson*, 390 U.S. at 572, 581, 583).  Even though the "inevitable effect" of § 1201(a) "was said to be the needless encouragement of pleas of guilty and waivers of jury trial," *id.* at 746, and even assuming that § 1201(a) was a "but for" cause of the defendant's guilty plea, the Court found the circumstances "d[id] not necessarily prove that the plea was coerced and invalid as an involuntary act," *id.* at 749-50.

While acknowledging that "agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant," the *Brady* Court found "nothing of the sort [wa]s claimed" and there was no evidence the defendant "was so gripped by fear of the death penalty or hope of leniency that he did not or could not with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty."  *Id.* at 750.  Before the defendant pled guilty, the Court observed that he was not subject to "threats or promises" from authorities, he "had competent counsel and full

18

opportunity to assess the advantages and disadvantages of a trial as compared with those attending a plea," and he entered his guilty plea "in open court and before a judge obviously sensitive to the requirements of the law with respect to guilty pleas." *Id.* at 754-55. On that basis, the Court found the guilty plea voluntary. *Id.* at 755. The Court also found the plea "intelligently made," since the defendant "was advised by competent counsel, he was made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties[.]" *Id.* at 756. This finding was not altered by the fact that his counsel had advised him of a potential impact from § 1201(a) that was later found unconstitutional. *Id.* The Court observed that the decision to plead guilty was often "heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted" and explained: "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Id.* at 756-57.

Ultimately, the *Brady* Court found the guilty plea valid, explaining that "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id.* at 757. In other words, the Court held the Constitution does not require "that a defendant . . . be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought[.]" *Id.*

Here, as discussed above, the state court of appeals observed not only that Mr. Acosta was represented by "two experienced and competent counsel" and admitted his guilt at a hearing

19

where he testified that he was satisfied with his counsel and the court "engaged in a thorough colloquy . . . , informing him of each of the rights he was giving up and ensuring that he understood the same," but also that Mr. Acosta "had knowledge of what occurred on the day that Gonzalez was killed and therefore would have known if Rivera's statements were true or false," and could have explored any issues regarding the circumstances and truthfulness of Mr. Rivera's statement to the police "during the pendency of his case." *Acosta*, 2022-Ohio-3327, ¶¶ 47-50. It was neither contrary to nor an unreasonable application of the Supreme Court's decision in *Brady* for the state court to effectively conclude that Mr. Acosta's "solemn admissions in open court that he committed the act[s] with which he [wa]s charged" were knowing, voluntary, and intelligent even though Mr. Rivera's later revised testimony would have left the State with "a weaker case than the defendant had thought." *See Brady*, 397 U.S. at 757.

### ii.     The State Court Decision Did Not Unreasonably Interpret the Facts

Turning to whether the state appellate court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2), the undersigned also concludes that this standard has not been met.

Mr. Acosta argues that the state court "relied on an unreasonable interpretation of the facts in light of the record" when it found his guilty plea knowing, voluntary, and intelligent because: (1) the court did not give any weight to evidence from the 2021 evidentiary hearing, even though testimony at the hearing showed Mr. Acosta "did not understand the elements of prior calculation and design"; (2) the transcripts of the plea and sentencing hearings from 2014 also "evidence [Mr.] Acosta's lack of understanding" and "[c]omments by both trial co-counsel set forth facts which do not establish the elements of prior calculation and design sufficient to support a knowing plea to [a]ggravated murder"; (3) Mr. Acosta "lacked understanding that his

20

admitted conduct constituted a lesser offense than the crime charged" until Mr. Rivera recanted his prior testimony in 2020; (4) the state court of appeals failed to consider Mr. Acosta's youth in assessing the validity of his plea; (5) the state court gave "dispositive weight to the reputation of trial counsel" even though one of Mr. Acosta's prior attorneys was later suspended from the practice of law based on allegations of misconduct involving other clients. (ECF Doc. 12, pp. 8-10.) The undersigned will address each argument in turn.

First, as to the argument that the state court did not consider evidence from the 2021 evidentiary hearing, including testimony that Mr. Acosta "did not understand the elements of prior calculation and design," neither the state court's decision nor evidence identified by Mr. Acosta bears out this argument. The state court of appeals provided a detailed recitation of the evidence and testimony presented at the evidentiary hearing, *Acosta*, 2022-Ohio-3327, ¶¶ 20-38, but concluded that Mr. Acosta's new claim of innocence to aggravated murder was not sufficient grounds to withdraw his "counseled plea of guilty" considering that "he had knowledge of what occurred on the day that Gonzalez was killed and therefore would have known if Rivera's statements were true or false," and could have explored any issues regarding Rivera's police interview while the case was still pending, but instead "entered a guilty plea without asserting actual innocence" after a "thorough colloquy" where the court advised him of the rights he would give up when he pled guilty, *id.* at ¶¶ 45-49. Further, not only has Mr. Acosta failed to identify what testimony from the 2021 hearing shows he did not understand the elements of prior calculation and design at his plea hearing seven years earlier, but the Sixth Circuit has also recognized that "[a] defendant's statements on the record during a plea colloquy that he or she understands the nature and the consequences of the plea provide strong evidence that the plea was intelligent and knowing." *Boyd*, 99 Fed. App'x. at 703. With this argument, Mr. Acosta has

failed to establish that the state court made an unreasonable determination of the facts in light of the evidence presented in state court.

Second, as to the argument that the transcripts of the plea and sentencing hearings from 2014 show Mr. Acosta did not understand the elements of prior calculation and design, and that the facts set forth by counsel on the record did not establish the elements of prior calculation and design, these assertions are made without any citations to supporting testimony in the state court record.  (*See* ECF Doc. 12, p. 8.)  Upon independent review of the plea colloquy, the undersigned found no indication that Petitioner entered his guilty plea without understanding. The trial court judge advised him of the rights he would waive by pleading guilty, inquired as to his state of mind and understanding, and heard from defense counsel that it was his professional opinion that Mr. Acosta was entering a plea knowingly, voluntarily, and intelligently.  (ECF Doc. 8-2, pp. 16-23 (Tr. 16:18-23:17).)  At no point did Mr. Acosta express a lack of understanding of the process or consequences of his plea.  (*Id.*)  With this argument, Petitioner again fails to show that the state court made an unreasonable determination of the facts in light of the evidence presented in state court.

Third, as to the argument that Mr. Acosta did not understand until Mr. Rivera recanted his prior testimony that the conduct admitted in his guilty plea constituted a lesser offense than the crime charged, the undersigned agrees with the state court of appeals that Mr. Acosta's own admitted presence at the scene of the crime would have made him aware of the truth or falsity of Mr. Rivera's statements to police before he entered his guilty plea.  *See Acosta*, 2022-Ohio-3327, ¶ 47.  Indeed, as the court of appeals noted, Mr. Acosta's testimony at the 2021 hearing reflected that he anticipated his own trial testimony would be different from Mr. Rivera's, but considered Mr. Rivera's statement in deciding to plead guilty because Mr. Rivera "was the only other person

present" and Mr. Acosta's attorneys "did not think his testimony would overcome Rivera's statements." *Id.* at ¶¶ 35-36.  Thus, the evidence would support a finding that Mr. Acosta understood the elements of prior calculation and design, including their import to the charge of aggravated murder, and pled guilty after considering the potential that a jury would believe Mr. Rivera's testimony over his own.  This argument also fails to show that the state court made an unreasonable determination of the facts in light of the evidence presented in state court.

Fourth, as to the argument that the state court of appeals failed to consider Mr. Acosta's youth in assessing the validity of his plea, Mr. Acosta provides no developed argument and cites to no specific evidence to support a finding that the state courts failed to take Mr. Acosta's youth into account.  This underdeveloped argument thus fails to show that the state court of appeals made an unreasonable determination of the facts in light of the evidence before the state court.

Finally, as to the argument that the state court gave improper, "dispositive" weight to the reputation of Mr. Acosta's trial counsel, it is clear from a review of the state appellate court's decision that no such weight was given.  As discussed above, the appellate court considered the fact that Mr. Acosta: was present at the crime scene, and therefore would have known the truth or falsity of Mr. Rivera's statements before his guilty plea; could have inquired further into the circumstances of Mr. Rivera's statements during the pendency of the case; was represented by counsel and testified that he was satisfied with that representation; entered a guilty plea in open court following a thorough colloquy regarding his rights, and did not assert his innocence to aggravated murder until years later; and had experienced and competent trial counsel who stated on the record at the plea hearing that they believed the plea would be knowing, voluntary, and intelligent.  There is no indication that the court gave "dispositive" or otherwise improper weight to the "reputation of trial counsel."  Indeed, the Supreme Court in *Brady* also considered the fact

23

that a petitioner was "represented by competent counsel throughout" when evaluating whether a guilty plea was made knowingly, intelligently, and voluntarily.  *See* 397 U.S. at 743.  Mr. Acosta's further assertions regarding reported disciplinary actions against one of his lawyers based on allegations of misconduct involving other clients years after the guilty plea are irrelevant here, where Mr. Acosta has neither alleged specific misconduct by his trial counsel nor identified evidence in the record to support findings of misconduct in this case.[3]  This argument also fails to show that the state court made an unreasonable determination of the facts in light of the evidence presented in state court.

For the reasons set forth above, the undersigned finds Mr. Acosta has not met his burden to show the state court's finding that his guilty plea was voluntary, knowing, and intelligent "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181.  Accordingly, the undersigned recommends that the Court **DENY** the federal constitutional claim in Ground Three on the merits.

## C.  Ground One is Not Cognizable

In Ground One, Mr. Acosta asserts that "[a] guilty plea does not preclude a claim of diminished culpability or newly discovered evidence," arguing that the state court of appeals erred in reversing the trial court order that granted his motion to withdraw his guilty plea because the appellate court "did not weigh any evidence in the record arising out of the 32.1 hearing," "improperly limited its scope to the plea proceeding," "omitted review of the relevant motion to

---

[3] The proffered citation to external, unrelated disciplinary proceedings is also not properly considered in this federal habeas action.  *See Cullen*, 563 U.S. at 170 (holding that a federal habeas court may only review evidence in the record at the time of the state court proceedings).

withdraw plea hearing, which was part of the record," and "failed to include the full record in its review, which included new evidence establishing a manifest injustice in the plea proceedings." (ECF Doc. 3, p. 6.)  Although the language in the Amended Petition challenges the state court's alleged errors in deciding the appeal on Mr. Acosta's Motion to Withdraw, Mr. Acosta argues in his Traverse that those errors amounted to a failure to view his guilty plea "in light of all the circumstances" as required by the Supreme Court.  (ECF Doc. 12, pp. 3-7.)

Respondent challenges Petitioner's assertion that the state court of appeals did not consider Mr. Rivera's "recantation testimony," arguing that is simply not true.  (ECF Doc. 8, pp. 21-23.)  Further, Respondent argues that Ground One is not cognizable because the alleged errors under state law may not be considered on federal habeas review, and "[t]he only question on collateral review of a guilty or no contest plea is whether the plea was counseled and voluntary."  (*Id.* at pp. 23-24 (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)).)

For the reasons explained in Section III.B.3., *supra*, the undersigned agrees that the state court of appeals appropriately considered the new evidence in its decision, and that Mr. Acosta has failed to show the state court's finding that his guilty plea was knowing, voluntary, and intelligent was "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  The additional Supreme Court cases Mr. Acosta cites in support of Ground One do not change this analysis.  (*See* ECF Doc. 12, pp. 3, 5 (citing *Henderson v. Morgan*, 426 U.S. 637 (1976); *Bradshaw v. Stumpf*, 545 U.S. 175 (2005); *Class v. United States*, 583 U.S. 174 (2018)).)[4]

---

[4] In *Henderson*, the Supreme Court found a guilty plea was not voluntary when the defendant "was not advised by counsel or court, at any time, that an intent to cause the death or a design to effect the death of the victim" was an

More importantly, the claims in Ground One of the Petition do not explicitly challenge the constitutional validity of Mr. Acosta's guilty plea but rather allege errors by the state court of appeals in deciding the appeal on his post-conviction motion to withdraw his guilty plea. (ECF Doc. 3, p. 6.)  Mr. Acosta's reference to caselaw relating to the constitutional validity of his guilty plea in the Traverse does not alter this fact.  *See Jalowiec v. Bradshaw*, 657 F.3d 293, 311-12 (6th Cir. 2011) (finding district court properly declined to address bases for a habeas claim that were raised only in the traverse, not in the petition) (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005)).  Because Ground One challenges alleged errors in a state post-conviction proceeding, including errors of state law, the undersigned concludes that the claims articulated in Ground One of the Petition are not cognizable on federal habeas review.[5]

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person *is in state custody 'in violation of the Constitution or laws or treaties of the United States.'"  Cullen*, 563 U.S. at 181 (quoting § 2254) (emphasis added).  The Sixth Circuit has therefore "consistently held that errors in [state] post-conviction proceedings are outside the scope of federal habeas corpus review."  *Cress*, 484 F.3d at 853 (citing *Kirby*, 794 F.2d at 247 and *Roe*, 316 F.3d at 571); *see Brown El v. Warden, Warren Corr. Inst.*, No. 18-3657, 2018 WL

---

essential element of the crime.  426 U.S. at 640, 644-45.  And in *Bradshaw*, the Supreme Court recognized that a guilty plea would be invalid if a defendant was not advised of the elements of the charge, but found no requirement "that the judge must himself explain the elements of each charge to the defendant on the record."  545 U.S. at 182-83.  These decisions do not impact this Court's analysis because the evidence does not prove Mr. Acosta was never advised that prior calculation and design were elements of the aggravated murder charge; instead, he contends he was not aware of facts that undermine the evidence of prior calculation and design he considered in deciding to plead guilty.  (*See* ECF Doc. 12, p. 3.)  In *Class*, a defendant was permitted to challenge his conviction on the grounds that the underlying statute was unconstitutional, despite his guilty plea, because his "knowing, voluntary, and intelligent admission that he did what the indictment alleged" did not preclude him from challenging the statute that criminalized his admitted conduct.  *See* 583 U.S. at 176, 181.  Here, Mr. Acosta does not seek a finding that Ohio's aggravated murder statute is unconstitutional but instead alleges that his guilty plea was not voluntary.

[5] To the extent the allegations in Ground One might be interpreted to contain a challenge to the constitutional validity of Mr. Acosta's guilty plea, the undersigned would recommend that the Court DENY Ground One on its merits for the same reasons set forth in Section III.B.3., *supra*, with respect to Ground Three.

26

6982323, at *3 (6th Cir. Dec. 3, 2018) ("[I]nfirmities in state post-conviction proceedings are not cognizable in federal habeas proceedings[.]") (citing *Cress*, 484 F.3d at 853 and *Kirby*, 794 F.2d at 248).  The court explained:

> We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well. (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in]...release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ]...is not in any way related to the confinement. *Id*. at 248.

*Cress,* 484 F.3d at 853 (alterations in original); *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854-55 (6th Cir. 2017) (declining to revisit the issue).

Ground One, as framed in this case, challenges the result of a post-conviction proceeding, not the fact of Petitioner's custody itself.  That means even a finding in Petitioner's favor on that ground for relief "would not 'result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247) (alteration in original).  At best, Mr. Acosta might be entitled to return to state court for reconsideration of his motion to withdraw his guilty plea.  That is not the sort of relief a federal writ of habeas corpus is designed to provide.  *See id*. ("[C]laims challenging state collateral post-conviction proceedings cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254,

27

because the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.") (internal quotations and quotation marks omitted); *see also Crespo v. Fender*, No. 1:22-CV-1065, 2025 WL 43728, at *7 (N.D. Ohio Jan. 8, 2025) (finding challenges to a post-conviction petition and motion to withdraw guilty plea proceedings were not cognizable because they challenged "errors in his state post-conviction proceedings rather than the legality of his custody") (citing *Cress*, 484 F.3d at 853; *Kirby*, 794 F.2d at 246-47), *certificate of appealability denied sub nom. Crespo v. Mackey*, No. 25-3104, 2025 WL 4349335 (6th Cir. Aug. 22, 2025); *Mason v. Wainwright*, No. 1:18-CV-0787, 2021 WL 6750540, at *2 (N.D. Ohio Aug. 27, 2021) ("[I]n the absence of a constitutional violation in the taking of the plea, a trial court's abuse of discretion in denying a subsequent motion to withdraw the plea does not trigger constitutional concerns.") (citation omitted; bracket in original), *report and recommendation adopted sub nom. Mason v. Harris*, No. 1:18-CV-787, 2022 WL 254109 (N.D. Ohio Jan. 27, 2022).

Further, to the extent the state court's alleged errors in deciding Mr. Acosta's appeal on the post-conviction motion were premised on the application of state law, the claims are also not cognizable because federal courts on habeas review are limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle*, 502 U.S. at 67-68; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]"); *Engle v. Isaac*, 456 U.S. 107, 121, n. 21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted)).

For the reasons set forth above, the undersigned concludes that Ground One is not cognizable on federal habeas review. Accordingly, the undersigned recommends that the Court **DISMISS** Ground One with prejudice.

28

**D.      The Claim in Ground Four Was Waived and/or is Not Cognizable**

In Ground Four, Mr. Acosta asserts that the trial court did not abuse its discretion by looking outside the plea proceeding when granting his Motion to Withdraw. (ECF Doc 3, p. 11; ECF Doc. 12, p. 10.) Respondent argues that Ground Four is not cognizable because there is no constitutional right to withdraw a guilty plea, and Ground Four raises issues of state rather than federal law. (ECF Doc. 8, p. 29.) Alternately, Respondent argues that Ground Four is procedurally defaulted because Mr. Acosta did not fairly present this argument to the highest court in the state. (ECF Doc. 8, pp. 28-31.) Mr. Acosta makes no argument regarding the cognizability of Ground Four and does not dispute that he failed to present Ground Four to the Ohio Supreme Court. (ECF Doc. 12, p. 10.) Instead, he argues that he has overcome the default of this ground for relief because he has shown that he is actually innocent.[6] (*Id.* at pp. 10-12.)

While Mr. Acosta appears to concede that Ground Four is procedurally defaulted, the Court need not address whether that default should be excused because procedural default is not a jurisdictional bar to review. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.") (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). In the interests of judicial economy, the undersigned will instead consider the merits of Ground Four.

Despite having counsel, Mr. Acosta does not make any legal arguments to support the merits of Ground Four in his Traverse, simply relying on the few supporting facts alleged in the Amended Petition. (*See* ECF Doc 3, p. 11; ECF Doc. 12 (Traverse); *see also*, ECF Doc. 1 (original petition); ECF Doc. 1-2 (brief in support of original petition, which did not include

---

[6] Mr. Acosta makes no argument that cause and prejudice excuse the procedural default of Ground Four. (*See* ECF Doc. 12.) The undersigned therefore considers any such argument waived.

Ground Four).)  The undersigned therefore finds that the claims in Ground Four are inadequately developed and accordingly waived.  *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

Further, even if the Court were to consider the merits of the claim in Ground Four, the undersigned would recommend dismissal because the claim that the trial court did not abuse its discretion in a state post-conviction proceeding suffers the same flaws outlined in Section III.C., *supra*, with respect to Ground One.[7]  In Ground Four, Mr. Acosta asks this Court to determine whether the state court of appeals properly applied Ohio's abuse of discretion standard in a post-conviction proceeding, a non-cognizable question of state law and procedure that may not be considered by this court.  *See Estelle*, 502 U.S. at 67-68; *Lewis*, 497 U.S. at 780; *Engle*, 456 U.S. at 121 n.21.  Like other courts, the undersigned concludes that this Court lacks the authority to "adjudicate a claim that the state court improperly denied a motion to withdraw a guilty plea" on federal habeas review.  *Mason*, 2021 WL 6750540, at *2 (finding claim that trial court abused its discretion in denying a motion to withdraw guilty plea not cognizable on habeas review) (citing *Artiaga v. Money*, No. 3:04 CV 7121, 2007 WL 928640, at *2 (N.D. Ohio Mar. 27, 2007) and *Xie v. Edwards*, 35 F.3d 567 (Table) (6th Cir. 1994)); *see also Crespo*, 2025 WL 43728, at *7.

---

[7] Although the Respondent raised the issue of cognizability in the Return of Writ (ECF Doc. 8, p. 29), Mr. Acosta failed to respond to this argument in the Traverse.  (*See* ECF Doc. 12.)

30

For the reasons set forth above, the undersigned concludes that the claim in Ground Four is both waived and not cognizable on federal habeas review.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Four with prejudice.[8]

## IV.    Recommendation

For the reasons set forth above, the undersigned recommends that the Court **DENY** Ground Three of the Amended Petition on the merits, **DISMISS** Grounds One and Two as not cognizable on federal habeas review, and **DISMISS** Ground Four as waived and/or not cognizable on federal habeas review.

DATE: May 26, 2026

 /s/ Amanda M. Knapp
Amanda M. Knapp
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[8] Because the undersigned concludes that Mr. Acosta's grounds for relief lack merit, are not cognizable on federal habeas review, and/or were waived, any alternate arguments from Respondent regarding the dismissal or denial of Mr. Acosta's Amended Petition need not be addressed herein.

31